UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**GARY ROCKIS** and **TONI ROCKIS**,

    Plaintiffs,

v.                                                                            2:21-cv-357-JLB-NPM

**JEANNE SCHNEIDER** and **ERIC SCHNEIDER**,

    Defendants.

## ORDER

As alleged in the complaint, a contemplated real-estate transaction quickly transformed into contemplated legal action—and ultimately this lawsuit—when the buyers began to question the sellers' false representations about the history of water leaks, repairs, and insurance claims for a home in Naples, Florida. During this real-estate matter, the sellers were represented by real-estate broker John R. Wood, Inc., and its agent Thomas Grifferty ("Realtors"). (Doc. 1 ¶¶ 11, 13). On March 7, 2021, the buyers—plaintiffs Gary and Toni Rockis—contracted with the sellers—defendants Jeanne and Eric Schneider—to purchase a house for $112,000 more than its asking price. (Doc. 1 ¶¶ 26-27). And in anticipation of acquiring the Naples residence, the buyers sold their Palm Beach, Florida home on April 10. (Doc. 1 ¶¶ 34, 38).

Alarmed by an inability to obtain adequate insurance for the Naples house, the buyers began to unearth disturbing information about the roof. (Doc. 1 ¶¶ 39-62). Sometime around the end of March, the buyers hired an attorney, Patricia Martin. (Doc. 135 at 4). And as early as April 1, the buyers' real-estate agent forwarded an email about the buyers' concerns to Grifferty, with an open copy going to the buyers' attorney. (Doc. 135, ¶ 15). Just two days later, Grifferty noted to his colleagues and/or the sellers that "it wouldn't be a bad idea to start discussing this with a lawyer. . .." (Doc. 135, ¶ 16). On April 21, the closing date came and went without a successful closing, but the sellers retained the buyer's $170,000 deposit. And on May 3, less than two months after they contracted to purchase the house, the buyers sued.

During discovery, the buyers asked the sellers and their realtors to produce various communications. But the sellers and their realtors interposed attorney-client-privilege objections (among others) to some of the requests. The buyers now move to compel production of the withheld communications. They argue that some communications were not privileged, that any privilege for others was waived because they were not kept in confidence, and that none of the communications are shielded by privilege because they were made in furtherance of a fraud. (Doc. 127). The sellers assert that they did not waive privilege because their communications

were part of a joint defense between the sellers, their realtors, and their agents; and they deny the allegations of fraud. (Doc. 135).[1]

"[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. This action involves breach of contract, fraudulent non-disclosure and concealment, and civil conspiracy claims. (Doc. 1). So Florida law governs privilege. As codified in Florida Statute § 90.502, the attorney-client privilege protects "confidential communications made in the rendition of legal services to the client." *S. Bell Tel. & Tel. Co. v. Deason*, 632 So. 2d 1377, 1380 (Fla. 1994). Generally, a client waives the privilege, however, by voluntarily disclosing the communication to a third party. *AG Beaumont 1, LLC v. Wells Fargo Bank, N.A.*, 160 So. 3d 510, 512 (Fla. 2nd DCA 2015). But there are exceptions. Relevant here, "litigants who share unified interests in litigation [may] exchange privileged information in order to adequately prepare their cases." *Id*. And furthermore, a communication "'by any form of agency employed or set in motion by the client is within the privilege.'" *Id*. (quoting *Gerheiser v. Stephens*, 712 So. 2d 1252, 1255 (Fla. 4th DCA 1998)).

---

[1] At this suit's inception, the buyers advanced claims against the sellers' realtors. These claims were settled before the realtors' response to the instant motion became due. (Docs. 133, 138, 142). Realtors state only that they "agree to abide by the Court's ruling" on the motion. (Doc. 138). The court has reviewed both the sellers' and realtors' withheld production in camera, including all documents that the buyers seek in their motion to compel as well as the documents subject to their request for an updated privilege log.

The work-product doctrine, on the other hand, is governed by federal law. *See W. Wyvern Cap. Invs., LLC v. Bank of Am., N.A.*, No. 8:22-cv-191-WFJ-SPF, 2023 WL 3751995, *3 (M.D. Fla. May 3, 2023). The doctrine protects from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A).

Except for one item, the court does not compel the production of any of the withheld documents. Among them is a retainer agreement between the sellers and HL Law Group, P.A., a firm with which they consulted in 2019 to potentially challenge an insurance-claim denial. But a retainer agreement is not privileged so long as it does not reveal the mental impressions and opinions of counsel. *See Finol v. Finol*, 869 So. 2d 666 (Fla. 4th DCA. 2004). And the document at issue is a boilerplate retainer agreement. Moreover, defendant Eric Schneider stated in his deposition that he contacted HL Law Group to look into the claim denial. (Doc. 150-5 at 21). So Sellers must disclose bates numbers 636-640.[2]

---

[2] Plaintiffs seek defendants' bates numbers "366-40" (Doc. 127 at 17) and "630-314" (Doc. 127 at 13). These appear to be typographical errors, and the court assumes plaintiffs mean "636-640" and "630-631." Further, plaintiffs seek 630-631 based on a belief that these pages involve communications between the defendants and their realtors. But the realtors were not involved in this communication, and the court has nonetheless reviewed the communication and finds that it is privileged.

Otherwise, the court denies the buyers' / plaintiffs' motion to compel. To start, some of the communications are irrelevant.[3] These communications—many of which involve the unadorned forwarding of other items—illuminate nothing regarding the claims and defenses at issue in this matter. On this score, the sellers need not disclose bates numbers 531, 540-541, 542, 547-548, 560-561, 583, 590-591, 619, 667, 674, 740-742, and 743-747. The realtors need not disclose bates numbers 481-482, 487-488, and 822.

Second, some of the communications are protected by the attorney-client privilege and pose no waiver issues. These communications were made in confidence between the sellers or their realtors, individually, and their attorneys for the purpose of obtaining legal advice related to this action. So the sellers need not disclose bates numbers 512, 514, 620-622, 624, 628-629, 630-631, 632-640, 748-749, 750-753, and 754-756. The realtors need not disclose bates numbers 925-926.

---

[3] Plaintiffs cite nonbinding and unpersuasive caselaw regarding Rule 26's relevance standard. (Doc. 127 at 10). Citations to cases predating the 2015 amendments to Rule 26(b)—and even predating the amendments made in 1983, 1993, and 2000—are inappropriate because those decisions concern outdated versions of Rule 26. As the Advisory Committee on Civil Rules noted in 1983: "Rule 26(b)(1) has been amended to add a sentence to deal with the problem of over-discovery.... The new sentence is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." In 1993: "The revisions in Rule 26(b)(2) are intended to provide the court with broader discretion to impose additional restrictions on the scope and extent of discovery...." In 2000: "The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." And in 2015: "Rule 26(b)(1) is changed in several ways.... The former provision for discovery of relevant but inadmissible information that appears 'reasonably calculated to lead to the discovery of admissible evidence' is also deleted. The phrase has been used by some, incorrectly, to define the scope of discovery."

Third, other communications did not waive the attorney-client privilege. Many of the communications involving the sellers or their realtors did not lose their privileged status because the common-interest exception applies. That exception allows "litigants who share unified interests to exchange . . . privileged information to adequately prepare their cases without losing the protection afforded by the privilege." *Visual Scene, Inc. v. Pilkington Bros., plc.*, 508 So. 2d 437, 440 (Fla. 3d DCA 1987). And it extends to persons who "anticipate litigation against a common adversary on the same issue or issues. . .." *Id*. at 443 (quoting *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1299-1300 (D.C. Cir. 1980)).

Given the timeline of events, the sellers and their realtors undoubtedly anticipated litigation in early April. At that time, the buyers had raised issues with the insurability of the home and hired an attorney. And the sellers and their realtors knew this. Long before the failed closing date, the buyers' attorney alluded to a potential suit by using terms like "damages" in her communications with the sellers. And a hopeful comment by the sellers' attorney that litigation seemed unlikely nevertheless indicated that the potential for litigation was on his radar. Nearly all of the withheld communications occurred after the sellers and their realtors anticipated litigation.

Moreover, for the common-interest exception to apply, the sellers and their realtors need not both have their own counsel involved in the communications at

issue. To be sure, some portions of the *Visual Scene* opinion (the leading Florida opinion on this exception) describe the exception as applying to communications between the parties' attorneys. But this is not necessary. Indeed, the exception finds its roots in cases involving the absence of counsel. *See, e.g.*, *Chahoon v. Commonwealth*, 62 Va. 822, 842 (1871). This makes sense. The common-interest exception concerns whether a *waiver* of privilege occurs, not whether the underlying communication is privileged to begin with. So the exception should not turn on whether counsel for each party in the common-interest group are involved in the potentially-waiving communication. Rather, what matters is that there is an underlying privileged communication to begin with (presumably involving an attorney), and that communication is shared only with parties who have a common interest in anticipated or ongoing litigation—thus no waiver of the privilege. That is what happened here. So the sellers need not disclose bates numbers 646-647, 651-654, 655-666, 668-669, 670-689, 690-698, 699-701, 715-721, 722-735, and 736-739. The realtors need not disclose bates numbers 235, 501-511, 523-525, and 528-530.

On a similar score, including persons other than the sellers and their realtors in the communications did not waive privilege either. Some of the withheld communications involve employees of John R. Wood, Inc. Because a corporation is involved, the court must employ certain factors to decide whether the corporation's

employees enjoy the attorney-client privilege (and thus whether their inclusion in communications waives that privilege). *See Deason*, 632 So. 2d 1377, 1383 (Fla. 1994). Here, the factors weigh in favor of privilege. John R. Wood, Inc. was a named defendant in this matter. The communications involving employees of the corporation relate to legal services and would not have been made but for this controversy. The communications were disseminated on a need-to-know basis. And it is clear on the face of the communications that everyone involved considered the communications confidential. Other communications include law firm staff and are also privileged. *See* Fla. Stat. § 90.502(1)(c) (extending attorney-client privilege to "[t]hose reasonably necessary for the transmission of the communication."). So the sellers need not disclose bates numbers 535, 633-635, 641-642, and 643-645. The realtors need not disclose bates numbers 176, 493-494, 495-497, 498-500, 512-519, 520, 531, 542, 545, and 547-548.

Fourth, some of the communications are work product. In one document, defendant Eric Schneider made notes on an email written by Gary Rockis, and then emailed himself the notes. The notes appear to have been made weeks after this litigation began, and the sellers have not shared the notes with any third parties. Another document is a proposed letter, drafted by the sellers' attorney. So the sellers need not disclose bates numbers 648-650 and 757-761.

Finally, the buyers' assertion of the crime-fraud exception falls short. Florida Statute § 90.502(4)(a) provides that attorney-client privilege is inapplicable if the "services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew was a crime or fraud." But the party seeking disclosure must "allege and produce prima facie evidence that [the withholding party] affirmatively sought the advice of counsel to procure a fraud." *Fla. Min. & Materials Corp. v. Cont'l Cas. Co.*, 556 So. 2d 518, 519 (Fla. 2nd DCA 1990). Plaintiffs have not met this bar. Based on the overall record and informed by an *in camera* review of the documents, the court finds it inappropriate to displace attorney-client privilege on this ground.[4]

Accordingly, Plaintiffs' motion to compel (Doc. 127) is **granted in part.**[5] The sellers need only—and must promptly—disclose the engagement agreement with HL Law Group.

**ORDERED** on February 23, 2024.

NICHOLAS P. MIZELL
United States Magistrate Judge

---

[4] In the interest of efficiency, the court has addressed each requested document in this order only once. But many of the documents could be withheld on multiple grounds.

[5] The buyers also suggest that the sellers and their realtors should supplement their privilege logs. (Doc. 127 at 11). Because the court has reviewed the withheld documents *in camera* and does not order their production, supplementing the privilege logs is unnecessary.